**CLAYTON COAL COMPANY, a Colorado Corporation, Plaintiff-Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation, Defendant-Appellee.**

No. 77–1148.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 22, 1979.

Decided March 29, 1979.

William L. Senter, Elliott & Greengard, Denver, Colo., on brief, for plaintiff-appellant.

Albert E. Zarlengo, Jr., Zarlengo, Mott & Zarlengo, Denver, Colo., on brief, for defendant-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 with jurisdiction based on diversity. The issue is whether an insurance policy covered claims of coal miners made under Title IV of the Federal Coal Mine Health and Safety Act of 1969, the Act, as amended. 30 U.S.C. § 901 et seq. The district court rejected the claim of coverage. We affirm.

Title IV of the Act pertains to black lung benefits. To divide the financial responsibility between the Federal Government and the coal industry, Title IV provides two separate and distinct programs. See Senate Report No. 92–743, 92d Cong., 2d Sess., 2 U.S.Cong. & Admin.News 1972, pp. 2305, 2310. The purpose of the two-part structure was to assume federal responsibility for the backlog of claims and to give impetus to state programs for future claims. Id. at 2311.

Part B, 30 U.S.C. §§ 921–924, originally covered claims for benefits filed on or before December 31, 1972. Administration of this Part was delegated to the Secretary of Health, Education, and Welfare with pay-ments made by him. 30 U.S.C. §§ 902(c) and 922(a). An open period was provided for the filing of claims without limitation as to the date of the last injurious exposure. 30 U.S.C. § 923. The Black Lung Benefits Act of 1972 extended Part B to cover claims filed through December 31, 1973. 86 Stat. 150, 155, and see 30 U.S.C. § 924(a)(1).

Part C, 30 U.S.C. §§ 931–936, as amended in 1972, covers claims for benefits after December 31, 1973, with administration delegated to the Secretary of Labor. 30 U.S.C. §§ 902(c), 931, and 932. S.Rep. No. 92–743, supra at 2323, refers to the sharing of responsibility and after referring to the extension of the transition period for one year says:

> "Lifetime benefits will also be paid by the Federal government for all new claims filed prior to December 31, 1972. For claims filed during calendar year 1973, the Federal government pays benefits only during that year, and for subsequent years claims are to be paid by the industry. Claims filed on or after January 1, 1974 will be paid for by the employer."

See also 30 U.S.C. § 932(a). The financial responsibility of the operators is discharged by the procurement of insurance coverage or by qualifying as self-insured. 30 U.S.C. § 933(a).

To facilitate insurance coverage, the National Council for Compensation Insurance devised an assigned risk plan. Insurance carriers willing to assume black lung coverage would notify a central agency which would receive applications from coal mine operators and assign the risk to one of the participating carriers. The operator would then negotiate with the selected carrier for the insurance. Under this plan a participating carrier would have to take the risk assigned to it and the operator was required to accept that carrier and arrange for the desired insurance coverage. In Colorado the Mountain States Compensation Rating Bureau became the assigning agency. Liberty Mutual was a participating carrier.

Plaintiff-appellant Clayton Coal operated a coal mine in Colorado until about August 10, 1974. It applied, at a date not appearing in the record, to the Mountain States Bureau and on May 15, 1974, the Bureau notified Clayton Coal that Liberty Mutual was the assigned carrier and that Clayton Coal should make the deposit premium to Liberty Mutual. On May 17, 1974, Clayton Coal wrote Liberty Mutual and asked that, on the payment of the necessary premium, the policy be dated back to January 1, 1974. On May 29, Liberty Mutual wrote Clayton Coal that the policy would become effective on receipt of the deposit for the premium and stating: "We cannot back date the coverage in any way." Clayton Coal paid the deposit and the policy became effective June 7, 1974.

On October 5, 1973, George Pappas filed with the Department of Labor a claim for benefits under the Act. The Department determined that Clayton was the apparent last responsible operator. On or about December 18, 1974, the Department sent Clayton an "Operator Notification Form" relating to the Pappas claim. On December 30, 1974, the attorneys for Liberty Mutual sent to the Department of Labor a "Supplemental Operator Controversion Form" contesting liability on the Pappas claim. On February 13, 1975, Liberty Mutual by letter to Clayton denied coverage. The record indicates that a number of other black lung claims against Clayton are within the same factual category as the claim of Pappas. All were filed with the appropriate agency before June 7, 1974, the effective date of the policy. Notice of the claims was received by Clayton Coal within the policy period. It promptly notified Liberty Mutual which rejected the claims as not within policy coverage.

Clayton Coal then brought this declaratory judgment action in federal district court for Colorado. The sole issue is policy coverage. The case was submitted on the pleadings, a response to a request for admissions, and two depositions. After making oral findings and conclusions, the court held that the Liberty Mutual policy did not cover the claims in suit and entered judgment for Liberty Mutual.

The controversy centers on a policy endorsement which was required by a regulation of the Secretary of Labor made pursuant to the Act. See 20 C.F.R. § 726.203(a). Clayton Coal does not contest the validity of the regulation. The endorsement amends policy Art. IV(2) to make the policy apply to injury

"by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period, or occurred prior to July 1, 1973 and *claim based on such disease is first filed against the insured during the policy period.*" (Emphasis supplied.)

A regulation of the Secretary of Labor, 20 C.F.R. § 725.125(a)(1), says with relation to the filing of claims:

"Except as otherwise provided in this section, for the purposes of determining when a claim has been filed within the meaning of Part C of Title IV of the Act, a claim is considered to *have been filed only as of the date it is received* at an office of the Social Security Administration or by an employee of the Administration who is authorized to receive such claims." (Emphasis supplied.)

Clayton Coal does not contest the fact that the claims in suit were filed with the federal agency before the effective date of the policy. The Department's notices to Clayton Coal of the claims were after that date. Clayton Coal argues that the § 725.-125 provision for filing is pertinent only to determine when the payment of benefits commences and not to provide any limitation. We do not agree. The statute and the legislative history of both the 1969 Act and the 1972 amendments show the importance which Congress attached to filing. The distinction between Parts B and C is

based on the filing date of the claim. The 1972 amendments, 86 Stat. 156–157, added a new section, now 30 U.S.C. § 925, covering the transition period July 1 to December 31, 1973. Subsection (a)(3) requires the Secretary to notify promptly any operator whom he believes to be liable. The liability of an operator, or its insurance carrier, does not depend on the uncertain date of the Secretary's notification. The controlling date is the filing with the agency. We reject Clayton Coal's argument that the filing date is pertinent only to the establishment of the date when benefits may start. The filing date has general pertinence to the administrative procedures provided in Title IV. Section 725.125(a) is a reasonable, proper, and applicable regulation.

■ The critical provision of the endorsement requires that the claim be "first filed against the insured during the policy period." The language comes directly from the last three lines of the endorsement which 20 C.F.R. § 726.203(a) requires to be attached "to the standard workmen's compensation and employer's liability policy prepared by the National Council on Compensation Insurance affording coverage under the Federal Coal Mine Health and Safety Act of 1969." The policy in suit comes within the mentioned category. Clayton Coal argues that because Liberty Mutual is a member of, and contributes financially to, the National Council, any doubt regarding the endorsement must be resolved against Liberty Mutual. We do not agree. The Secretary promulgated the regulation and it was within his prerogative to adopt the suggested language. The endorsement is reasonable and clear. It does not conflict with any statutory provision or with any regulation. The use of the phrase "first filed" brings into play § 725.125(a) with its definition of when a claim is "first filed."

■ Clayton Coal argues that when the endorsement is read together with the policy provision on "Notice of Claim or Suit" there is ambiguity which must be resolved

in its favor. We find no ambiguity. The notice of claim provision is a policy condition which applies only if there is coverage. The endorsement amends Art. IV(2) which is part of the "Insuring Agreement."

■ Under the assigned risk program adopted to facilitate insurance coverage Clayton Coal did not have the opportunity to shop for insurance but was given the name and address of the assigned underwriting carrier. Because it had no other viable opportunity, Clayton Coal was obliged to accept Liberty Mutual. Clayton Coal argues that because of the disparity in bargaining power, the doctrine of contract by adhesion requires that coverage be that which Clayton Coal reasonably expected. See *Gray v. Zurich Insurance Company*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 171–172. The argument has no significance. Clayton Coal knew exactly what it was getting. It requested that the policy be back dated to January 1, 1974, and offered to pay the additional premium. Liberty Mutual rejected the request. Clayton Coal was well aware that the policy was dated June 7, 1974, and had no reasonable expectation of coverage before that date. Clayton Coal presents no explanation or excuse for its failure to apply for insurance coverage before January 1, 1974.

■ Clayton Coal also argues that Liberty Mutual is estopped to deny coverage and has waived its right to do so. Neither estoppel nor waiver is mentioned in the complaint as a ground for policy coverage. Estoppel is claimed on the basis of the premium charged. Liberty Mutual concedes that it erred in making a surcharge, but the payment was returned to Clayton Coal. On the record presented there is nothing to show that the amount of the premium had anything to do with the extent of coverage. Clayton Coal also relies on Liberty Mutual's action in filing with the Department the "Operator Controversion Form" which asserted defenses to the Pappas claim. Nothing therein shows an

acceptance of liability by Liberty Mutual or a waiver of its claim of non-coverage. Clayton Coal was promptly advised that Liberty Mutual rejected the Pappas claim because of non-coverage. Nothing in the record shows that Clayton Coal relied on the action of Liberty Mutual or that Clayton Coal suffered any detriment from that action. See e. g. *First National Bank of Denver v. Ulibarri*, Colo.App., 557 P.2d 1221, 1223, and cases there cited.

Affirmed.