**LOVILIA COAL COMPANY and Bituminous Casualty Corporation, Petitioners,**

v.

**Verda M. WILLIAMS and Office of Workers' Compensation Programs, Respondents.**

No. 96–2980.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1997.

Decided April 29, 1998.

---

Mark E. Solomons (argued), Laura M. Klaus, Arter & Hadden, Washington, DC, for Petitioners.

Ronald K. Bruce, Madisonville, KY, for Respondent Williams.

Allen H. Feldman, Department of Labor, Appellate Litigation, Washington, DC, Donald S. Shire, Edward D. Sieger, Elizabeth Hopkins (argued), Barry H. Joyner, Department of Labor, Office of the Solicitor, Washington, DC, for Respondent Office of Workers' Compensation Programs.

Thomas O. Shepherd, Jr., Benefits Review Board, Washington, DC, for Party–In–Interest Benefits Review Board.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

On November 23, 1990, Billie Williams ("Williams") filed a claim for workmen's compensation benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901. Williams, who suffered from pneumoconiosis, or "black lung disease," died on July 31, 1992, before his claim was fully processed. Williams's widow, respondent Verda Williams, continued to pursue her husband's claim. Petitioners Lovilia Coal Company ("Lovilia") and Bituminous Casualty Corporation ("Bituminous") contested the claim in a hearing before an administrative law judge ("ALJ") on March 19, 1994. The ALJ ruled that although Mrs. Williams was entitled to benefits, Lovilia and Bituminous were not responsible for the payment of those benefits. The Director of the U.S. Labor Department Office of Workers' Compensation Programs and Mrs. Williams appealed the ruling to the Benefits Review Board, which reversed, holding that Lovilia, as a "responsible operator," and Bituminous, as a "responsible insurer," were liable to pay benefits. Lovilia and Bituminous appeal and we affirm.

## I. BACKGROUND

Partners Williams and Tommy Wignall ("Wignall") became joint-owners of Lovilia Coal in the early 1980's. Williams took an active role in the management of the coal operation, and frequently worked in the coal mines alongside other employees. According to the Black Lung Benefits Act ("BLBA"), as an "operator" of a coal mine, Lovilia was required to demonstrate to the federal Government an ability to provide workmen's compensation benefits either through self-insurance or commercial insurance to its employees who became disabled by black lung

disease. *See* 30 U.S.C. § 933.[1] Operators who are unable to make this showing may be punished by civil penalty. The BLBA requires coal mine operators to provide benefits to miners who are totally disabled due to black lung disease contracted as a result of employment in coal mines, as well as to surviving family members when a miner's death is caused by black lung disease. *See id.* at §§ 901(a), 922(a), 932(c). A "miner" is "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." *Id.* at § 902(d).

To comply with the federal insurance requirement, Lovilia purchased a commercial insurance policy from Bituminous. A commercial policy fulfills an operator's duty to insure under the BLBA only if: (1) benefits are paid notwithstanding the requirements of a state workmen's compensation law providing for lesser payments; and (2) insolvency or bankruptcy of the operator does not relieve the insurance carrier from liability for payment. *See id.* at § 933(b). The policy, which contained both of these mandatory elements, provided that Bituminous would "pay promptly when due *all* compensation and other benefits required of the insured by the workmen's compensation law." (emphasis added). Furthermore, federal regulations require that the parties entering into BLBA workmen's compensation insurance policies append an FCMHSA "endorsement" assuring compliance with the BLBA. *See* 20 C.F.R. § 726.203(a). Accordingly, the contract between Lovilia and Bituminous included an endorsement stating, in relevant part:

> It is agreed that: 1. with respect to the operations ..., the unqualified term "workmen's compensation law" includes part C of title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 931–936, and any law amendatory thereto, or supplementary thereto, which may be or become effective while this poli-

cy is in force, and definition (a) of Insuring Agreement III is amended accordingly.

This language had the effect of incorporating the provisions of the BLBA into the terms of the insurance policy contract.

Bituminous charged a premium for the policy based, in part, on the salaries of the covered miners. The owners of Lovilia Coal, Williams and Wignall, did not pay insurance premiums for themselves. An audit by Bituminous dated July 24, 1985, reflected that both partners were excluded from workmen's compensation coverage.

Lovilia ceased operations and declared bankruptcy in 1984, and Bituminous canceled Lovilia's insurance in 1985 for nonpayment of premiums. In 1990, Williams became sick with black lung disease, and on December 10, 1990, he filed a claim with the Labor Department's Office of Workers' Compensation Programs ("OWCP") for workmen's compensation benefits under the BLBA. Upon receipt of Williams's claim, the OWCP commenced an investigation to assess his eligibility for BLBA benefits.

In June of 1991, the OWCP notified the petitioners that they would be liable for the BLBA benefits to which Williams was entitled if the OWCP found that he was disabled by black lung disease. This determination came as a result of the OWCP's conclusion that Williams was a "miner," as defined under the BLBA, because he "worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." The OWCP also concluded that Lovilia was the "responsible operator."[2] The OWCP named Bituminous as the insurer in accordance with OWCP's internal records, which identified Bituminous as Lovilia's carrier.

On September 25, 1991, the OWCP concluded that black lung disease had rendered Williams disabled, qualifying him for BLBA benefits. This entitled Williams, and his wife after his demise, to compensation under the

---

1. The BLBA falls within Title IV of the Federal Coal Mine Health and Safety Act of 1969 ("FCMHSA"), codified as amended at 30 U.S.C. §§ 801–962. The FCMHSA defines an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine...." *Id.* at § 802(d).

2. In general, the operator who most recently employed the miner for a period of one year or longer will be deemed the responsible operator. *See id.* at § 725.493(a)(1).

BLBA, to be paid by the identified responsible operator through its insurance carrier, or in the event that the insurer was unable to pay, through the Black Lung Disability Trust Fund ("Trust Fund"). The Trust Fund ensures that disabled miners receive their BLBA benefits even when an operator disputes liability or is unable to provide compensation through self-insurance or commercial insurance. *See* 26 U.S.C. § 9501(d). The OWCP notified Lovilia and Bituminous of its determination, and forwarded an "Agreement to Pay Benefits" form for the petitioners' signatures. The petitioners' signatures would legally bind them to provide Williams with black lung disease benefits. Although Lovilia and Bituminous executed the Agreement to Pay Benefits, they contested Lovilia's designation as the responsible operator, and accordingly, requested a hearing before an ALJ.

Prior to the adjudication of his claim, Williams died of black lung disease. His widow, Verda Williams, notified the ALJ that she would file a survivor's claim under the BLBA, which in turn would entitle her to her husband's benefits.[3] The ALJ later remanded Williams's claim back to the OWCP to

determine whether the widow was entitled to benefits. On May 12, 1993, the OWCP notified the parties that Mrs. Williams was entitled to her husband's BLBA benefits. Enclosed with the petitioners' copy of the notice was a second Agreement to Pay Benefits form, which the petitioners declined to sign. The widow's claim was referred to the ALJ for resolution. On July 8, 1994, the ALJ ordered Williams's benefits to be paid from the Trust Fund. The ALJ found that the insurance policy with Bituminous could not reasonably be construed as providing coverage in the event Williams developed black lung disease[4] and that Lovilia, as a matter of law, could not be the responsible operator because it is was organized as a partnership.[5] The Director of OWCP appealed to the Benefits Review Board, which reversed the ALJ's decision and held the petitioners liable for payment of Williams's claims. The Benefits Review Board agreed with the OWCP that the fact that Lovilia was a partnership did not affect its status as a responsible operator. The Board also found that the BLBA does not allow partners to opt out of coverage.

3. A deceased miner's surviving spouse may receive benefits under the BLBA if the spouse demonstrates that she was dependent on the decedent at the time of death, that she has subsequently remained single and that the miner's death was due to pneumoconiosis. *See* 20 C.F.R. § 725.212. A survivor's claim is thus derivative of the deceased miner's claim in that the miner must have had pneumoconiosis. In addition, the source of payment for her claim depends on which of her deceased spouse's employers is the "responsible operator," who also bears liability for a survivor's claim. *See id.* at § 725.492(a) (observing that the responsible operator is liable for *benefits* (i.e. including both survivor's and miner's benefits) under the BLBA).

4. The ALJ's analysis of the contract's language is conclusory, stating in relevant part:

The evidence ... establishes that Bituminous Casualty Corp. issued a policy of coverage with the appropriate and necessary Federal endorsement to Billie E. Williams and Tom Kent Wignall, doing business as Lovilia Coal Company. Thereby, Billie E. Williams and Tom Kent Wignall were protected from liabilities to which they may be exposed. *Close scrutiny of this insurance contract demands the conclusion that it cannot reasonably be construed to include protection under the Act should either partner Williams or partner Wignall contract*

*coal workers' pneumoconiosis.* Rather, Carrier's policy provided protection for liabilities to which partner Williams and partner Wignall might be called upon to shoulder. Whether Williams and/or Wignall elected under Illinois law to be covered under the Workers['] Compensation Act is really of no great consequence or significance. The fact is that no such election was made and the form and content of the contract of coverage was not modified. Be that as it may, the Bituminous Casualty policy provided no coverage or protection for the partners Billie E. Williams and Tom Kent Wignall.

(emphasis added). Nowhere does the opinion identify any provision of the policy that supports the ALJ's conclusion.

5. The ALJ's discussion of the partnership issue consists, in its entirety, of the following paragraph:

The question then presented is what, under the law, is Lovilia Coal Company. The answer is exceedingly simple. Lovilia Coal Company is a title, a mere business name, a legal non-entity. As such, Lovilia Coal Company cannot be and is not a Responsible Operator. Rather, the Responsible Operator is Billie E. Williams and Tom Kent Wignall doing business as Lovilia Coal Company.

## II. ISSUES

On appeal, the petitioners contend that the BLBA cannot require payment of benefits to a mine owner who opted not to purchase workmen's compensation insurance for himself, but who did purchase it for his employees. Bituminous and Lovilia further claim that the McCarran–Ferguson Act precludes the OWCP from requiring that the petitioners pay Williams's benefits.

## III. ANALYSIS

In considering an appeal from the judgment of the Benefits Review Board, we evaluate the propriety of the ALJ's underlying decision. *See Freeman United Coal Mining Co. v. Stone,* 957 F.2d 360, 362 (7th Cir.1992) (citation omitted). This is true even in situations where the Board has overturned the ALJ's decision. "[I]t is the Administrative Law Judge's decision we review to determine whether it is supported by substantial evidence, in accord with the law, and not irrational. If it is, the Board's decision must be reversed, even if it is also supported by substantial evidence." *Freeman United Coal Mining Co. v. Benefits Review Bd.,* 942 F.2d 415, 422 (7th Cir.1991) (citation and internal quotations omitted).

### A. *Construction of the Insurance Contract*

We initially consider whether the insurance policy obligates the petitioners to provide benefits for Williams's entitlements under the BLBA. The petitioners contend that the BLBA does not require an insurer to pay benefits to a mine owner who has opted not to purchase workmen's compensation insurance for himself, and has thus not paid any premiums, but has paid the necessary premiums for his employees.[6] We disagree. The BLBA and its regulations require that every coal operator's contract of insurance contain provisions agreeing to cover fully *all* of the coal operator's liabilities under the BLBA. The insurance contract between Bituminous and Lovilia is in conformity with these requirements, and specifically provides coverage for "all compensation and other benefits" required of Lovilia under the BLBA. Furthermore, the petitioners do not dispute that Williams is entitled to black lung benefits; they only contend that the Trust Fund, and not Bituminous, should be responsible for providing those benefits. However, the law specifically requires Bituminous to pay benefits to all insured "miners," regardless of whether or not insurance premiums have been paid. As discussed above, § 933 of the BLBA requires coal operators to insure payments of benefits. "[E]ach such operator shall be liable for and shall secure the payment of benefits, as provided in this section and § 933 of this title." 30 U.S.C. § 932(b). According to section 933, "each operator of a coal mine ... shall secure the payment of benefits for which he is liable under § 932 of this title by (1) qualifying as a self-insurer ..., or (2) insuring and keeping insured the payment of such benefits...." *Id.* at § 933(a). Insurance providers implicitly agree to pay all benefits required under the BLBA; that is, benefits must be paid to eligible miners and their survivors. *See id.* at §§ 933(b)(1), 922(a).

When creating this insurance scheme, the Labor Secretary determined that drafting an insurance policy tailored to the BLBA might result in "unnecessary administrative delays and expense...." 20 C.F.R. § 726.203(c). Thus, in providing BLBA insurance, the Secretary allowed operators and insurers to use standard workmen's compensation policies, subject to an endorsement that provides that the term " 'workmen's compensation law' includes Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 931–936, and any law amendatory thereto, or supplementary thereto, which may be or become effective while this policy is in force...." *Id.* at § 726.203(a). Therefore, insurers may use existing workmen's compensation policies to insure BLBA benefits so long as they include an endorsement explicitly incorporating the provisions of the BLBA, as did Bituminous's policy with Lovilia in this case.

Furthermore, insurers are held to be as responsible as coal mine operators in assuring that black lung benefits policies conform to federal law. *See id.* at § 726.207. "Each

---

**6.** As discussed earlier, both parties agree that Williams did not pay premiums.

carrier shall report to the Office [of Workers' Compensation Programs] each policy and endorsement issued, cancelled, or renewed by it to an operator." *Id.* at § 726.208. Most important, the regulations also provide:

> Every carrier seeking to write insurance under the provisions of [the BLBA] shall be deemed to have agreed that the acceptance by the Office of a report of the issuance or renewal of a policy of insurance, as provided for by § 726.208 *shall bind the carrier to full liability for the obligations under this Act of the operator named in said report. It shall be no defense to this agreement that the carrier failed or delayed to issue, cancel or renew the policy to the operator covered by this report.*

*Id.* at § 726.210 (emphasis added). Several courts have interpreted the meaning of the language of section 726.210, and have held that such language obligates insurers to assume a coal mine operator's entire liability; insurers are not permitted to provide partial liability, even at the request of the coal mine operator. In *Tazco, Inc. v. Director,* Office of Workers Compensation Programs, the Fourth Circuit held:

> The regulations properly identify the insurance carrier as a party in interest for the simple reason that *the carrier takes on all the employer's responsibilities in connection with insured claims.* Once the carrier has reported the issuance of the policy, as mandated by the regulations, the insurer is fully liable for the obligations of the operator. *See* 20 C.F.R. §§ 726.208–10. The carrier is required to discharge the statutory and regulatory duties imposed on the employer, thus stepping into its shoes.

895 F.2d 949, 951 (4th Cir.1990) (footnote omitted) (emphasis added). In *National Mines Corp. v. Carroll,* 64 F.3d 135, 140 (3d Cir.1995), the Third Circuit, recognizing the court's reasoning in *Tazco,* which provides that insurers are liable for all BLBA liability, held that "the [BLBA] and regulations do not contemplate limiting the carrier's exposure to indemnifying an operator found liable for payments of benefits." (footnote and citation omitted).

The petitioners erroneously attempt to refute this line of reasoning by relying on the TenthCircuit's decision in *Clayton Coal Co. v. Liberty Mutual Ins. Co.,* 594 F.2d 1378 (10th Cir.1979). In *Clayton,* the Tenth Circuit held that insurer Liberty Mutual was not liable for the payment of black lung insurance benefits pursuant to a policy created between the insurer and the coal operator. *See id.* at 1382. However, the court's reasoning was based on the fact that the endorsement required under 20 C.F.R. § 726.203(a) specifically relieves insurance companies from paying benefits on claims filed *before the effective date of the policy. See id.* No *ex post facto* issue exists in the case under consideration. We hold that the very structure of the BLBA effectively requires that an insurance carrier provide benefits for all of a coal mine operator's black lung liability, and that the insurance carrier bears the burden of collecting proper premiums for all covered miners. Thus, the petitioners are liable for the respondent's benefits even though Williams did not pay premiums for himself.

On the contrary, the ALJ found that the insurance policy failed to provide coverage because Williams was a partner in Lovilia Coal. According to the policy, "[i]f the insured is a partnership ..., such insurance as is afforded by this policy applies to each partner ... thereof as an insured only while he is acting within the scope of his duties as such partner." However, the policy also provided that "[t]erms of this policy which are *in conflict with the provisions of the workmen's compensation law* are hereby amended to conform to such law." (emphasis added). As discussed earlier, the FCMHSA endorsement amends the definition of "workmen's compensation law" as used in the contract to include benefits required under the BLBA. The BLBA compensates "miners," defined as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d). This definition treats coal-mining-employees and coal-mining-partners alike. The petitioners acknowledge that Williams was a miner eligible for BLBA benefits, and to the extent that the policy excludes a miner from coverage, it

conflicts with the BLBA. Therefore, the ALJ's ruling was in error.

Finally, the petitioners contend that they should not be held liable for the benefits because Bituminous did not charge premiums that accurately reflected the coverage of the policy sold. However, were we to accept this circular argument, we would in essence be freeing insurers of liability in any circumstance where an insurer contends that the premium charged did not "accurately reflect the coverage" of the policy sold. Lovilia sought insurance in order to discharge its duty to secure BLBA benefits, as required by 30 U.S.C. § 933(a). Bituminous sold Lovilia a policy that did just that *because* it contained the FCMHSA endorsement. By including the endorsement, Bituminous redefined the liability it assumed under the contract to include liability for benefits imposed on Lovilia by the BLBA. Under the Act, Lovilia bears liability for benefits owed its miners (and surviving spouses), and Williams was a miner within the terms of section 902(d). Whether Bituminous charged an appropriate premium is not relevant to whether the BLBA imposed liability on Lovilia.

## B. Applicability of the McCarran–Ferguson Act

■ The petitioners next contend that the McCarran–Ferguson Act ("McCarran") precludes coverage for Williams's claim because the BLBA, without clear authorization from Congress, preempts Illinois's prerogative to regulate insurance. With regard to the business of insurance, McCarran " 'overturn[ed] the normal legal rules of preemption' by imposing a rule 'that state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless the federal statute specifically provides otherwise.' " *American Deposit Corp. v. Schacht*, 84 F.3d 834, 837–38 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996) (quoting *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 507, 113 S.Ct. 2202, 2211, 124 L.Ed.2d 449 (1993)). McCarran specifically provides:

(a) State regulation

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) Federal regulation

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012. McCarran thus "establishes a form of inverse preemption, letting state law prevail over general federal rules— those that do not 'specifically relate[ ] to the business of insurance.' " *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 293 (7th Cir.1992), *cert. denied*, 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993). However, McCarran does not aim to "tie [Congress's] hands; instead it prescribed the consequences of silence and specificity in other acts past and future. Federal laws that do not conflict with or supersede state rules always apply; federal laws inconsistent with state laws apply when Congress says so directly." *Id.* at 295.

■ The Supreme Court has adopted a three-part test in order to determine whether section 2(b) of the McCarran Act precludes the application of a federal statute to preempt state insurance law. Under this test, McCarran precludes preemption if: (1) the federal statute at issue does not "specifically relat[e] to the business of insurance"; (2) the state statute at issue was "enacted for the purpose of regulating the business of insurance"; and (3) the application of the federal statute would "invalidate, impair, or supersede" the state statute. *Fabe*, 508 U.S. at 500–01, 113 S.Ct. at 2208 (internal quotations omitted). As a conjunctive test, all three factors must be satisfied for McCarran to preclude the application of a given federal statute.

■ Under the first *Fabe* criterion, we consider whether the BLBA specifically relates to the business of insurance. To make this determination, we follow a three-part test adopted by this Court in *American Deposit Corp. v. Schacht*. Namely, a statute relates to the business of insurance if the

law: (1) effectively transfers or spreads a policyholder's risk; (2) is an integral part of the policy relationship; and (3) is aimed solely at entities within the insurance industry. *See American Deposit,* 84 F.3d at 839 (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)).

Applying the three criteria to the statute under consideration, we hold that Congress intended to bypass the McCarran Act in enacting the BLBA. First, the effect of the law is to transfer and spread the policyholder's risk. In the absence of the BLBA, coal companies like Lovilia would be forced to individually bear the costs of providing medical care for their employees; employees who are engaged in an extremely risky and hazardous occupation that often gives rise to the lethal black lung disease. The requirement that coal companies purchase insurance has the effect of spreading the risk of these medical costs among all black lung insurance premium payers. Second, the BLBA is an integral part of the policy relationship between Lovilia and Bituminous. Under the BLBA, *all* of Lovilia's employees must be provided with workmen's compensation insurance from Bituminous, and the BLBA and federal regulations place an affirmative duty on insurance carriers such as Bituminous to be certain that policies comply with federal law. Third, the BLBA is aimed solely at entities that insure those employees who are exposed to the dangers and hazards of the coal mining industry. The purpose of the BLBA is to ensure that all coal miners are covered by workmen's compensation insurance.[7] The statute specifically directs carriers as to how they must structure their contracts with coal mine operators. *See* 30 U.S.C. § 933(a). For these reasons, the BLBA satisfies the three-part *American Deposit* test. Because the BLBA specifically relates to the business of insurance, the McCarran Act does not, as the petitioners contend, preclude the application of the BLBA in Illinois. Thus, the petitioners' various arguments concerning the viability of the BLBA in Illinois are invalid, and we need not continue our analysis of the remaining two *Fabe* requirements.

## IV. CONCLUSION

Under the BLBA, the insurance contract between Bituminous and Lovilia provides coverage for benefits on Williams's claim. Bituminous was familiar with the requirements of the law, and should have insisted that Lovilia pay premiums for Williams. Furthermore, the BLBA specifically relates to the business of insurance and therefore does not implicate the McCarran–Ferguson Act.

AFFIRMED.

---

7. The BLBA provides in part:
   Congress finds and declares that there are a significant number of coal miners living today who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines; that there are a number of survivors of coal miners whose deaths were due to this disease; and that few States provide benefits for death or disability due to this disease to coal miners or their surviving dependents. It is, therefore, the purpose of this subchapter to provide benefits, in cooperation with the States, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.
   30 U.S.C. § 901(a).