Petition for Writ of Mandamus Conditionally Granted and Opinion filed
January 20, 2006









Petition for Writ of Mandamus Conditionally Granted
and Opinion filed January 20, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-01035-CV

____________

 

IN RE AUTOTAINMENT PARTNERS LIMITED
PARTNERSHIP 

D/B/A PLANET FORD AND
WORLDWIDE AUTOTAINMENT, INC.,
Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 

O P I N I O N

Relators, Autotainment Partners Limited
Partnership, d/b/a Planet Ford (APlanet Ford@) and Worldwide Autotainment, Inc.,
seek a writ of mandamus ordering respondent, the Honorable Sharolyn P. Wood, to
vacate an order denying their motion to compel arbitration.  For the reasons that follow, we conditionally
grant relators= petition.

Background








Real party in interest, Solomon Israel, worked as a car
salesman for Planet Ford, a non‑subscriber under the Texas Workers= Compensation Act.[1]  Upon accepting employment, Israel was advised
that as a condition of his employment, he would have to agree to arbitrate any
disputes with Planet Ford under Planet Ford=s ADispute Resolution Program@ (the AProgram@). 
Israel signed an acknowledgment form stating he had received training on
the Program and a copy of the document.  

In August 2003, Israel was injured while working on Planet
Ford=s premises.  He was placed on paid leave and received
medical coverage through Planet Ford=s insurance plan. Israel returned to
work in April 2004, but suffered another injury, Aoff the job.@ 
Israel was again placed on paid leave. 
In September 2004, Planet Ford determined that Israel=s injuries were not work related and
ceased paying him.  Israel then wrote a
letter to Planet Ford claiming he was being retaliated against for Awhistle blowing@ and copied the letter to local news
media and government entities.  Planet
Ford investigated the claims made in the letter and upon completion of its
investigation terminated Israel=s employment effective March 2005.  Shortly thereafter, Israel filed suit against
Planet Ford for the injuries he sustained in August 2003.  Planet Ford moved to compel arbitration under
the terms of the Program.

At the hearing on the motion to compel, relators argued
Israel=s claim was subject to arbitration,
relying upon his signed acknowledgment, and asserted he was aware of that fact
because he filed a demand for arbitration on two occasions, in February 2005
and March 2005.   Israel did not respond
to the motion to compel arbitration, but at the hearing his counsel argued (1)
the acknowledgment was not an agreement to arbitrate, and (2) relying on In
re Kepka, __ S.W.3d __, 2005 WL 1777996 (Tex. App.CHouston [1st Dist.] 2005, orig.
proceeding), that the Program was unenforceable because the Federal Arbitration
Act (AFAA@) was reverse preempted.  After hearing argument, the trial court
denied the motion to compel, concluding it was not a case subject to
arbitration.  Relators filed a motion to
reconsider and, after a hearing, the trial court signed an order denying the
motion.  In this court, relators seek a
writ of mandamus ordering the trial court judge to withdraw her ruling and
compel Israel to arbitrate his dispute.  

 

 








Standard of Review

A party seeking to compel arbitration by mandamus must first
establish that an agreement subject to the FAA exists.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001) (orig. proceeding). 
Once existence of the agreement is established, the movant must show
that the claims asserted are within the scope of the agreement.  Id. 
Because federal policy favors arbitration, a presumption exists favoring
agreements to arbitrate under the FAA, and any doubts about the agreement=s scope are resolved in favor of
arbitration.  Id.  If the movant proves existence of a valid
agreement governing the dispute, the burden then shifts to the opposing party
to present evidence of a defense to enforcing the agreement.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003).  Absent a
defense to enforcing the arbitration agreement, the trial court has no
discretion but to compel arbitration and stay its proceedings once the
existence and application of the agreement has been shown.  In re J.D. Edwards World Solutions Co.,
87 S.W.3d 546, 549 (Tex. 2002).  When a
trial court erroneously denies a party=s motion to compel arbitration under
the FAA, the party has no adequate remedy at law and is entitled to a writ of
mandamus.  See, e.g., In re
FirstMerit Bank, 52 S.W.3d at 753.

Analysis  

Relators argue the trial court abused its discretion by not
compelling arbitration because they furnished (1) a copy of a binding
arbitration agreement, governed by the FAA; 
(2) the acknowledgment signed by Israel indicating he had received a
copy of the agreement and training on the Program; and (3) established that
Israel=s claim falls within the scope of the
agreement.  Israel argues the signed
acknowledgment form is not an arbitration agreement and therefore, relators
failed to prove there is an agreement to arbitrate.  He further argues that, even if he is
contractually bound to arbitration, (1) the Program expressly does not apply to
workers= compensation claims, and (2) the
McCarran-Ferguson Act reverse preempts the FAA. 

1. 
Did Relators Establish There is a Valid Agreement to Arbitrate?








Under the FAA, an agreement to arbitrate that is valid under
general principles of state contract law and involves interstate commerce is Avalid, irrevocable, and enforceable.@[2] 
9 U.S.C. ' 2; In re Halliburton Co., 80 S.W.3d 566, 568 (Tex.
2002).  The trial court=s determination of the arbitration
agreement=s validity is a legal question
subject to de novo review.  J.M.
Davidson, 128 S.W.3d at 223.  

Here, relators provided a verified copy of the Program,
stating that employee disputes will be submitted to binding arbitration and
governed by the FAA.  The Program also
provides that its terms modify the at-will employment relationship and
acceptance or continuation of employment means the individual is Abound by the terms of the Program as
contained in the Plan Document and Rules.@ 
Israel=s signed acknowledgment states the
following:

I, ___________ hereby acknowledge
that I have received a copy of the World Class Automotive Group Dispute
Resolution Program.  In addition I have
been provided with training/orientation on the [Program] and understand that
World Class Automotive Group has implemented such a program.  I have been given the opportunity to ask any
questions that I may have and I further understand should I have any questions
in the future, I may talk with my supervisor or utilize the employee hotline as
outlined in the [Program]. 

In sum, relators showed there is a valid arbitration agreement that is
subject to the FAA.  See Smith v. H.E.
Butt Grocery Co., 18 S.W.3d 910, 911-12 (Tex. App.CBeaumont 2000, pet. denied) (finding
evidence of agreement with broadly worded scope met movant=s burden to compel arbitration under
FAA).








Israel argues, however, that the acknowledgment is not proof
of a binding contract because (1) he did not sign it, and (2) it does not
apprise him that he will be bound to arbitration.  But, the FAA does not require an arbitration
clause be signed, so long as it is written and agreed to by the parties.  In re AdvancePCS Health L.P., 172
S.W.3d 603, 606 (Tex. 2005).  Nor does an
arbitration agreement have to be contained in each of the contract documents it
purports to cover.  Id.  Here, the acknowledgment expressly states
Israel received a copy of the Program, received training on the Program, and
understood such a Program was in use.  By
signing the acknowledgment, and by accepting employment, Israel agreed to the
terms contained in the Program documents. 
See, e.g., id. (finding parties agreed to arbitrate
disputes based on signed enrollment forms, which did not contain arbitration
clause but explicitly referenced and agreed to terms of the agreement that did
contain arbitration clause); see also In re Halliburton, 80 S.W.3d at
568B69; In re Big 8 Food Stores, Ltd.,
166 S.W.3d 869, 877 (Tex. App.CEl Paso 2005, orig. proceeding) (finding party agreed to
arbitration by signing employee benefit plan, evidence showed she attended a
benefits meeting, attended training, and that the statements at the meeting
were  translated into Spanish). 

Further, as evidence Israel was aware of the arbitration
agreement and its application to his claim, relators furnished a copy of a
demand for arbitration, dated February 15, 2005, filed by Israel, in which he
listed the nature of the dispute as A[c]laimant was injured on the
job.  Employer stopped paying disability
payments and cancelled medical services.@ 
In the trial court, Israel argued the demand did not concern his
underlying claim, but in his brief, Israel describes his second injury as
occurring  Aoff the job@; presumably then, the February
demand for arbitration was in reference to his August 2003 injury, the subject
of the underlying suit.  Regardless, the
demand for arbitration refutes Israel=s contention that he was unaware of
the arbitration agreement.  See, e.g.,
In re Big 8 Food Stores, 166 S.W.3d at 877 (noting that evidence other
than a signature can indicate assent to arbitrate).  Israel acknowledges he also received benefits
under the Program.  We conclude relators
established there is a valid arbitration agreement.  We turn to the agreement=s scope.

2. 
Does the Arbitration Agreement Encompass Israel=s Claim?








The scope of the Program is very broad and applies to Aany legal or equitable claim, demand
or controversy, in tort, in contract, under statutory or common law doctrines .
. . or alleging violation of any legal obligation@ that relates to or arises from the
employment relationship.  The Program
expressly encompasses disputes arising from (1) the Program itself; (2)
employment of an employee, including the terms, conditions, or termination of
such employment; (3) benefits incident to employment; and (4) Aany other matter related to the
relationship between@ Planet Ford and its employees, past or present.  Israel does not deny that the Program=s scope is broad.  He argues that his claim is one for workers= compensation benefits and therefore,
is expressly excluded under the Program.   


When determining whether a claim falls within the scope of an
arbitration clause, we focus on the factual allegations of the complaint,
rather than the legal causes of action asserted.  Dewey v. Wegner, 138 S.W.3d 591, 602
(Tex. App.CHouston [14th Dist.] 2004, no
pet.).  In his first amended petition,
Israel seeks damages against relators as a result of his fall on Planet Ford=s premises.  The petition states that relators owed a duty
to Israel to keep their premises in a safe condition, relators= negligent disregard of that duty
caused him to suffer damages, and they breached the standard of care to
properly maintain the premises.  These
are allegations of negligence and, as a tort, fall within the plain language of
the Program=s provisions.  

Israel does not cite to any authority that establishes a
negligence claim against a non-subscriber constitutes a claim for workers= compensation benefits under the
Workers= Compensation Act.  Israel acknowledges that Planet Ford is a
nonsubscriber under the Act and therefore, his remedy is governed by principles
of common-law negligence. (Resp. p. 1).  See
Tex. Lab. Code Ann. ' 406.033 (Vernon Supp. 2005).  Finally, Israel does not argue, and there is
no indication in the Program, that the parties intended Aworkers= compensation benefits@ to mean benefits other than those
provided for under the Workers= Compensation Act.  For
these reasons, coupled with the presumption favoring arbitration, we reject
Israel=s argument and conclude that his
claim falls within the scope of the arbitration agreement.  

Because relators established the existence of a valid
arbitration agreement encompassing the dispute, the burden shifted to Israel to
prove the agreement is unenforceable. 
Israel asserts his claim is not subject to arbitration because the
McCarran-Ferguson Act reverse preempts application of the FAA. He does not
contend that the arbitration agreement is unenforceable under principles of
contract law.








            3.  Does the McCarran-Ferguson Act Preempt
Application of the FAA Here?   

To the extent a state statute is inconsistent with the FAA,
the state statute is preempted.  In re
R & R Pers. Specialists of Tyler, Inc., 146 S.W.3d 699, 703 (Tex. App.CTyler 2004, orig. proceeding).  Israel does not argue that the FAA preempts
any particular provisions of the Workers= Compensation Act; rather, he
contends that his claims are for benefits under the Act and that, even if the
FAA preempts the Act, the McCarran-Ferguson Act (AMFA@) reverse preempts the FAA. 

In part, the MFA provides as follows:

No Act of Congress shall be construed
to invalidate, impair, or supersede any law enacted by any State for the
purpose of regulating the business of insurance, or which imposes a fee or tax upon
such business, unless such Act specifically relates to the business of
insurance

15 U.S.C. ' 1012(b).  In short,
under the MFA, state laws enacted for the purpose of regulating insurance
prevail over general federal laws that do not specifically relate to the
business of insurance.  See id.; see
also In re Kepka, 2005 WL 1777996, at *5. 
In determining whether the MFA applies to reverse preempt a federal
statute, the following requirements must be met:  1) the federal statute at issue does not Aspecifically relate[] to the business
of insurance@; 2) the state law was Aenacted . . . for the purpose of regulating
the business of insurance@; and 3) application of the federal statute would Ainvalidate, impair, or supersede@ the state insurance law. Lovilia
Coal Co. v. Williams, 143 F.3d 317, 324 (7th Cir. 1998) (citing U.S. Dep=t of Treasury v. Fabe, 508 U.S. 491, 500B01 (1993)); In re Kepka, 2005
WL 1777996, at *5.  All three factors
must be satisfied to preclude application of a federal statute.  Lovilia, 143 F.3d at 324.   








In support of his reverse preemption argument, Israel relies
upon In re Kepka, a case in which, the relator sued a nursing home for
negligence in caring for her deceased husband. 
When the nursing home moved to compel arbitration in accordance with an
agreement signed by the relator, she argued the arbitration agreement failed to
comply with Revised Civil Statute article 4590i,[3]
the health care liability law in effect. 
In re Kepka, 2005 WL 1777996, at *2B3. 
Under that statute, a health care provider could not require execution
of an arbitration agreement unless the form of agreement was written in ten
point boldface type, clearly and conspicuously informing the patient that he
should consult with an attorney prior to signing the agreement because he was
waiving his legal rights.  Id. at
*4.  The nursing home argued the FAA
preempted application of article 4590i, and relator argued the FAA was reverse
preempted under the MFA.  Id.  Agreeing with relator, the appellate court
held the MFA prevented the FAA from preempting the notice requirements under
article 4590i.  Id. at *8.  Kepka is distinguishable.  

Under the circumstances in Kepka, the notice
requirements contained in the state statute were not required in the FAA, and
it was evident that application of the FAA interfered with the requirements of
the state statute.  Id. at 4;
see also In re AdvancePCS Health, 172 S.W.3d at 606 n.5 (stating FAA
preempts state contractual requirements that apply only to arbitration
clauses).  This is not the case here.

Israel=s reverse preemption argument depends upon a state law that
is preempted by the FAA.  The FAA preempts
a state law only when that state law is inconsistent with the FAA=s policy favoring arbitration.  Even were we to hold that Israel=s claim is governed by the Workers= Compensation Act, which we do not,
he has not shown that any provision in the Act that might be applicable to his
claim is inconsistent with the FAA. 
Thus, there is no state law preempted by the FAA and there can be no
reverse preemption by the MFA. 

In sum, relators established the existence of a valid
arbitration agreement, encompassing Israel=s claim, and he has failed to show
that the arbitration agreement is otherwise unenforceable.  Therefore, the trial court abused its
discretion in denying relators= motion to compel arbitration.  We conditionally grant relators= petition for writ of 








mandamus.  The writ will issue only
if the trial court fails to comply with our holding.    

 

 

 

/s/        J. Harvey
Hudson,

Justice

 

Petition Conditionally Granted and Opinion filed
January 20, 2006.  

Panel consists of Justices Hudson, Frost and Seymore.

 











[1]See generally Tex. Lab. Code Ann. '' 401.001B410.301
(Vernon 1996 & Supp. 2005).  





[2]Whether the agreement involves interstate commerce is
not at issue in this case.  





[3]See Act of
May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2039‑64,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 884 (current version
at Tex. Civ. Prac. & Rem. Code Ann. '' 74.001‑.507 (Vernon Supp. 2004B2005)).