In re AUTOTAINMENT PARTNERS LIMITED PARTNERSHIP d/b/a Planet Ford and Worldwide Autotainment, Inc., Relators.

No. 14–05–01035–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 20, 2006.

Donald W. Gould, II, Houston, for relators.

Michael L. Atkinson, Conroe, for respondent.

Panel consists of Justices HUDSON, FROST and SEYMORE.

## OPINION

J. HARVEY HUDSON, Justice.

Relators, Autotainment Partners Limited Partnership, d/b/a Planet Ford ("Planet Ford") and Worldwide Autotainment, Inc., seek a writ of mandamus ordering respondent, the Honorable Sharolyn P. Wood, to vacate an order denying their motion to compel arbitration. For the reasons that follow, we conditionally grant relators' petition.

## Background

Real party in interest, Solomon Israel, worked as a car salesman for Planet Ford, a non-subscriber under the Texas Workers' Compensation Act.[1] Upon accepting employment, Israel was advised that as a condition of his employment, he would have to agree to arbitrate any disputes with Planet Ford under Planet Ford's "Dispute Resolution Program" (the "Program"). Israel signed an acknowledgment form stating he had received training on the Program and a copy of the document.

In August 2003, Israel was injured while working on Planet Ford's premises. He was placed on paid leave and received medical coverage through Planet Ford's insurance plan. Israel returned to work in April 2004, but suffered another injury, "off the job." Israel was again placed on paid leave. In September 2004, Planet Ford determined that Israel's injuries were not work related and ceased paying him. Israel then wrote a letter to Planet Ford claiming he was being retaliated against for "whistle blowing" and copied the letter to local news media and government entities. Planet Ford investigated the claims made in the letter and upon completion of its investigation terminated Israel's employment effective March 2005. Shortly thereafter, Israel filed suit against Planet Ford for the injuries he sustained in August 2003. Planet Ford moved to compel arbitration under the terms of the Program.

At the hearing on the motion to compel, relators argued Israel's claim was subject to arbitration, relying upon his signed acknowledgment, and asserted he was aware of that fact because he filed a demand for arbitration on two occasions, in February 2005 and March 2005. Israel did not respond to the motion to compel arbitration, but at the hearing his counsel argued (1) the acknowledgment was not an agreement to arbitrate, and (2) relying on *In re Kepka*, 178 S.W.3d 279 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding), that the Program was unenforceable because the Federal Arbitration Act ("FAA") was reverse preempted. After hearing argument, the trial court denied the motion to compel, concluding it was not a case subject to arbitration. Relators filed a motion to reconsider and, after a hearing, the trial court signed an order denying the motion. In this court, relators seek a writ of mandamus ordering the trial court judge to withdraw her ruling and compel Israel to arbitrate his dispute.

## Standard of Review

A party seeking to compel arbitration by mandamus must first establish that an agreement subject to the FAA exists. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding). Once existence of the agreement is established, the movant must show that the claims asserted are within the scope of the agreement. *Id.* Because federal policy favors arbitration, a presumption exists favoring agreements to arbitrate under the FAA, and any doubts about the agreement's scope are resolved in favor of arbitration. *Id.* If the movant proves existence of a valid agreement governing the dispute, the burden then shifts to the opposing party to present evidence of a defense to enforcing the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). Absent a defense to enforcing the arbitration agreement, the trial court has no discretion but to compel arbitration and stay its proceedings once the existence and application of the agreement has been shown. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549

---

1. *See generally* Tex. Lab.Code Ann. §§ 401.001–410.301 (Vernon 1996 & Supp.2005).

(Tex.2002). When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the party has no adequate remedy at law and is entitled to a writ of mandamus. *See, e.g., In re First-Merit Bank,* 52 S.W.3d at 753.

### Analysis

Relators argue the trial court abused its discretion by not compelling arbitration because they furnished (1) a copy of a binding arbitration agreement, governed by the FAA; (2) the acknowledgment signed by Israel indicating he had received a copy of the agreement and training on the Program; and (3) established that Israel's claim falls within the scope of the agreement. Israel argues the signed acknowledgment form is not an arbitration agreement and therefore, relators failed to prove there is an agreement to arbitrate. He further argues that, even if he is contractually bound to arbitration, (1) the Program expressly does not apply to workers' compensation claims, and (2) the McCarran–Ferguson Act reverse preempts the FAA.

### 1. Did Relators Establish There is a Valid Agreement to Arbitrate?

Under the FAA, an agreement to arbitrate that is valid under general principles of state contract law and involves interstate commerce is "valid, irrevocable, and enforceable."[2] 9 U.S.C. § 2; *In re Halliburton Co.,* 80 S.W.3d 566, 568 (Tex.2002). The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson,* 128 S.W.3d at 223.

■ Here, relators provided a verified copy of the Program, stating that employee disputes will be submitted to binding arbitration and governed by the FAA. The Program also provides that its terms

modify the at-will employment relationship and acceptance or continuation of employment means the individual is "bound by the terms of the Program as contained in the Plan Document and Rules." Israel's signed acknowledgment states the following:

> I, hereby acknowledge that I have received a copy of the World Class Automotive Group Dispute Resolution Program. In addition I have been provided with training/orientation on the [Program] and understand that World Class Automotive Group has implemented such a program. I have been given the opportunity to ask any questions that I may have and I further understand should I have any questions in the future, I may talk with my supervisor or utilize the employee hotline as outlined in the [Program].

In sum, relators showed there is a valid arbitration agreement that is subject to the FAA. *See Smith v. H.E. Butt Grocery Co.,* 18 S.W.3d 910, 911–12 (Tex.App.-Beaumont 2000, pet. denied) (finding evidence of agreement with broadly worded scope met movant's burden to compel arbitration under FAA).

■■ Israel argues, however, that the acknowledgment is not proof of a binding contract because (1) he did not sign it, and (2) it does not apprise him that he will be bound to arbitration. But, the FAA does not require an arbitration clause be signed, so long as it is written and agreed to by the parties. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 606 (Tex.2005). Nor does an arbitration agreement have to be contained in each of the contract documents it purports to cover. *Id.* Here, the acknowledgment expressly states Israel received a copy of the Program, received training on the Program, and understood

---

**2.** Whether the agreement involves interstate commerce is not at issue in this case.

such a Program was in use. By signing the acknowledgment, and by accepting employment, Israel agreed to the terms contained in the Program documents. *See, e.g., id.* (finding parties agreed to arbitrate disputes based on signed · enrollment forms, which did not contain arbitration clause but explicitly referenced and agreed to terms of the agreement that did contain arbitration clause); *see also In re Halliburton,* 80 S.W.3d at 568–69; *In re Big 8 Food Stores, Ltd.,* 166 ·S.W.3d 869, 877 (Tex.App.-El Paso 2005, orig. proceeding) (finding party agreed to arbitration by signing employee benefit plan, evidence showed she attended a benefits meeting, attended training, and that the statements at the meeting were translated into Spanish).

Further, as evidence Israel was aware of the arbitration agreement and its application to his claim, relators furnished a copy of a demand for arbitration, dated February 15, 2005, filed by Israel, in which he listed the nature of the dispute as "[c]laimant was injured on the job. Employer stopped paying disability payments and cancelled medical services." In the trial court, Israel argued the· demand did not concern his underlying claim, but in his brief, Israel describes his second injury as occurring "off the job"; presumably then, the February demand for arbitration was in reference to his August 2003 injury, the subject of the underlying suit. Regardless, the demand for arbitration refutes Israel's contention that he was unaware of the ·arbitration agreement. *See, e.g., In re Big 8 Food Stores,* 166 S.W.3d at 877 (noting that evidence other than a signature can indicate assent to arbitrate). Israel acknowledges he also received benefits under the Program. We conclude relators established there is a valid arbitration agreement. We turn to the agreement's scope.

### 2. Does the Arbitration Agreement Encompass Israel's Claim?

█ The scope of the Program is very broad and applies to "any legal or equitable claim, demand or controversy, in tort, in contract, under statutory or common law doctrines ... or alleging violation of any legal obligation" that relates to or arises from the employment relationship. The Program expressly encompasses disputes arising from (1) the Program itself; (2) employment of an employee, including the terms, conditions, or termination of such employment; (3) benefits incident to employment; and (4) "any other matter related to the relationship between" Planet Ford and its employees, past or present. Israel does not deny that the Program's scope is broad. He argues that his claim is one for workers' compensation benefits and therefore, is expressly excluded under the Program.

█ When determining whether a claim falls within the scope of an arbitration clause, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Dewey v. Wegner,* 138 S.W.3d 591, 602 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In his first amended petition, Israel seeks damages against relators as a result of his fall on Planet Ford's premises. The petition states that relators owed a duty to Israel to keep their premises in a safe condition, relators' negligent disregard of that duty caused him to suffer damages, and they breached the standard of care to properly maintain the premises. These are allegations of negligence and, as a tort, fall within the plain language of the Program's provisions.

Israel does not cite to any authority that establishes a negligence claim against a non-subscriber constitutes a claim for workers' compensation benefits under the Workers' Compensation Act. Israel ac-

knowledges that Planet Ford is a nonsubscriber under the Act and therefore, his remedy is governed by principles of common-law negligence. *See* Tex. Lab.Code Ann. § 406.033 (Vernon Supp.2005). Finally, Israel does not argue, and there is no indication in the Program, that the parties intended "workers' compensation benefits" to mean benefits other than those provided for under the Workers' Compensation Act. For these reasons, coupled with the presumption favoring arbitration, we reject Israel's argument and conclude that his claim falls within the scope of the arbitration agreement.

Because relators established the existence of a valid arbitration agreement encompassing the dispute, the burden shifted to Israel to prove the agreement is unenforceable. Israel asserts his claim is not subject to arbitration because the McCarran–Ferguson Act reverse preempts application of the FAA. He does not contend that the arbitration agreement is unenforceable under principles of contract law.

### 3. Does the McCarran–Ferguson Act Preempt Application of the FAA Here?

 To the extent a state statute is inconsistent with the FAA, the state statute is preempted. *In re R & R Pers. Specialists of Tyler, Inc.*, 146 S.W.3d 699, 703 (Tex.App.-Tyler 2004, orig. proceeding). Israel does not argue that the FAA preempts any particular provisions of the Workers' Compensation Act; rather, he contends that his claims are for benefits under the Act and that, even if the FAA preempts the Act, the McCarran–Ferguson Act ("MFA") reverse preempts the FAA.

 In part, the MFA provides as follows:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance

15 U.S.C. § 1012(b). In short, under the MFA, state laws enacted for the purpose of regulating insurance prevail over general federal laws that do not specifically relate to the business of insurance. *See id.; see also In re Kepka*, 178 S.W.3d at 288–89. In determining whether the MFA applies to reverse preempt a federal statute, the following requirements must be met: 1) the federal statute at issue does not "specifically relate[ ] to the business of insurance"; 2) the state law was "enacted ... for the purpose of regulating the business of insurance"; and 3) application of the federal statute would "invalidate, impair, or supersede" the state insurance law. *Lovilia Coal Co. v. Williams*, 143 F.3d 317, 324 (7th Cir.1998) (citing *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500–01, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)); *In re Kepka*, 178 S.W.3d at 288. All three factors must be satisfied to preclude application of a federal statute. *Lovilia*, 143 F.3d at 324.

In support of his reverse preemption argument, Israel relies upon *In re Kepka*, a case in which, the relator sued a nursing home for negligence in caring for her deceased husband. When the nursing home moved to compel arbitration in accordance with an agreement signed by the relator, she argued the arbitration agreement failed to comply with Revised Civil Statute article 4590i,[3] the health care liability law

**3.** *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2039–64, *repealed by* Act of June 2, 2003, 78th Leg.,

R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. &

in effect. *In re Kepka,* 178 S.W.3d at 285–86. Under that statute, a health care provider could not require execution of an arbitration agreement unless the form of agreement was written in ten point boldface type, clearly and conspicuously informing the patient that he should consult with an attorney prior to signing the agreement because he was waiving his legal rights. *Id.* at 287–88. The nursing home argued the FAA preempted application of article 4590i, and relator argued the FAA was reverse preempted under the MFA. *Id.* Agreeing with relator, the appellate court held the MFA prevented the FAA from preempting the notice requirements under article 4590i. *Id.* at 292. *Kepka* is distinguishable.

Under the circumstances in *Kepka,* the notice requirements contained in the state statute were not required in the FAA, and it was evident that application of the FAA interfered with the requirements of the state statute. *Id.* at 288; *see also In re AdvancePCS Health,* 172 S.W.3d at 606 n. 5 (stating FAA preempts state contractual requirements that apply only to arbitration clauses). This is not the case here.

Israel's reverse preemption argument depends upon a state law that is preempted by the FAA. The FAA preempts a state law only when that state law is inconsistent with the FAA's policy favoring arbitration. Even were we to hold that Israel's claim is governed by the Workers' Compensation Act, which we do not, he has not shown that any provision in the Act that might be applicable to his claim is inconsistent with the FAA. Thus, there is no state law preempted by the FAA and there can be no reverse preemption by the MFA.

In sum, relators established the existence of a valid arbitration agreement, en-

compassing Israel's claim, and he has failed to show that the arbitration agreement is otherwise unenforceable. Therefore, the trial court abused its discretion in denying relators' motion to compel arbitration. We conditionally grant relators' petition for writ of mandamus. The writ will issue only if the trial court fails to comply with our holding.

REM.CODE ANN. §§ 74.001–.507 (Vernon Supp. 2004–2005)).