NUMBER 13-10-00247-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






UNIT TEXAS DRILLING, LLC, UNIT DRILLING 

COMPANY, AND CLIFF WELKER, Appellants,


v.



CAESAR MORALES, JR. AND RHONDA MORALES, Appellees.





On Appeal from the 23rd District Court


of Matagorda County, Texas.


 




MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez



 Through this appeal, Unit Texas Drilling, L.L.C., Unit Drilling Company, and Cliff
Welker, seek to vacate an order denying their motion to compel arbitration. We reverse
and remand.

I. Background


 Appellees, Caesar Morales and his wife, Rhonda Morales, filed suit against
appellants (1) for injuries sustained by Caesar while working as a field mechanic for his
employer, Unit Texas Drilling, L.L.C. ("Unit Texas"). Unit Texas is a non-subscriber to the
Texas Workers Compensation Act. See Tex. Lab. Code Ann. § 406.002(a) (Vernon 2006)
(providing that, except for public employers and as otherwise provided by law, an employer
may elect to obtain workers' compensation insurance coverage). Appellants filed a motion
to compel arbitration based on Morales's participation in the "Occupational Injury Benefit
Plan" (the "Plan") offered by Unit Texas. The "Receipt, Safety Pledge, and Arbitration
Acknowledgment" ("Receipt"), signed by Caesar, provides, in relevant part:

 RECEIPT OF MATERIALS. By my signature below, I acknowledge that I
have received and read (or had the opportunity to read) the Summary Plan
Description (the "SPD") for the Unit Texas Drilling, L.L.C. Occupational Injury
Benefit Plan, effective on the Effective Date set forth on the cover of the
Summary Plan Description.


 INJURY NOTICE AND MEDICAL PROVIDERS. I understand and agree
that if I am injured on the job, I must notify my Rig Manager by the end of my
work shift on the date of the injury and receive any medical care from a Plan-approved physician in order to receive benefits under the Plan.


 . . . . 

 

 ARBITRATION. I also acknowledge that this SPD includes a mandatory
Company policy requiring that claims or disputes relating to the cause of an
on-the-job injury (that cannot otherwise be resolved between the Company
and me) must be submitted to an arbitrator, rather than a judge and jury in
court. I understand that by receiving this SPD and becoming employed (or
continuing my employment) with the Company at any time on or after the
Effective Date, I am accepting and agreeing to comply with these arbitration
requirements. I understand that the Company is also accepting and
agreeing to comply with these arbitration requirements. All covered claims
brought by my spouse, children, beneficiaries, representatives, executors,
administrators, guardians, heirs or assigns are also subject to the Company's
arbitration policy, and any decision of an arbitrator will be final and binding
on such persons and the Company. 


The Plan contains further information regarding arbitration. The Plan informs employees
that it includes a "formal appeals process for Plan benefit claims," and provides that if
employees are "not satisfied with how [their] injury is handled," the Plan "includes
arbitration procedures to resolve other injury-related disputes between you and the
company quickly and fairly." The Plan goes into further detail and describes the
"advantages of arbitration." The Plan's arbitration provisions are lengthy and detailed, and
provide in relevant part:

 The Company has adopted the following mandatory policy requiring that
you comply with the following arbitration requirements.


 Arbitration Requirement


 All claims or disputes described below that cannot otherwise be resolved
between the Company and you are subject to final and binding arbitration. 
This binding arbitration is the only method for resolving any such claim
or dispute.


 Claims Covered by this Arbitration Requirement


 This arbitration requirement applies to:



 any legal or equitable claim or dispute relating to creation,
enforcement[,] or interpretation of the arbitration provisions contained
in (1) a Receipt, Safety Pledge, and Arbitration Acknowledgment
form[,] or (2) this arbitration requirement; and




 any legal or equitable claim by or with respect to you for any form of
physical or psychological damage, harm[,] or death which relates to
an accident, occupational disease, or cumulative trauma (including,
but not limited to, claims of negligence or gross negligence or
discrimination; and claims for assault, battery, negligent
hiring/training/supervision/retention, emotional distress, retaliatory
discharge, or violation of any other noncriminal federal, state or other
governmental common law, statute, regulation or ordinance in
connection with a job-related injury, regardless of whether the
common law doctrine was recognized or whether the statute,
regulation[,] or ordinance was enacted before or after the Effective
Date of this booklet).



 This includes all claims listed above that you have now or in the future
against the Company . . . .


 The determination of whether a claim is covered by these provisions will also
be subject to arbitration under this arbitration requirement. Neither you nor
the Company will be entitled to a bench or jury trial on any claim
covered by this arbitration requirement. . . . These provisions also apply
to any claims that may be brought by your spouse, children, beneficiaries,
representatives, executors, administrators, guardians, heirs[,] or assigns. 
This binding arbitration will be the sole and exclusive remedy for resolving
any such claims or disputes.


 Appellants filed a motion to compel arbitration arguing that appellees were required
to arbitrate their claims pursuant to the Receipt, the SPD, and the Plan. By written
opposition to the motion to compel, appellees contended that the arbitration agreement
was invalid because: (1) their claims arise under the Texas Workers Compensation Act,
and therefore, the Federal Arbitration Act is preempted by the McCarran-Ferguson Act, see
15 U.S.C. § 1012(b); (2) the arbitration agreement violates section 406.033 of the Texas
Labor Code regarding non-subscriber employees, see Tex. Lab. Code Ann. § 406.033
(Vernon 2006); (3) the arbitration agreement is unconscionable because it requires
mandatory enrollment; (4) the agreement is ambiguous; and (5) the Plan is unconscionable
because it requires injured employees to report their injuries before the end of the work
shift in which the injury occurred. Appellants filed a reply brief in response to these
arguments. Following a non-evidentiary hearing, the trial court denied the motion to
compel arbitration. (2) 

 The trial court's order denying arbitration did not specify whether the arbitration
agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas
Arbitration Act ("TAA"). See 9 U.S.C. §§ 1-16 (2009) (FAA); Tex. Civ. Prac. & Rem. Code
Ann. §§ 171.001-.098 (Vernon 1997 & Supp. 2009) (TAA). Accordingly, appellants filed
both an original proceeding and an appeal. See Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration
under the FAA and TAA must pursue parallel proceedings). Concluding that appellants
possessed an adequate remedy by appeal, this Court denied the petition for writ of
mandamus. In re Unit Tex. Drilling, L.L.C., No. 13-10-00267-CV, 2010 Tex. App. LEXIS
5320, at *1-*2 (Tex. App.-Corpus Christi July 6, 2010, orig. proceeding) (per curiam)
(mem. op.); see Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon Supp. 2009) (now
allowing for an interlocutory appeal of a matter subject to the Federal Arbitration Act to the
same extent as allowed under federal law); In Re Helix Energy Solutions Group, Inc., 303
S.W.3d 386, 395 n.7 (Tex. App.-Houston [14th Dist.] 2010, orig. proceeding).

II. FAA


 We first consider whether appellants have established that the FAA applies in the
instant case. The FAA applies to transactions that involve commerce. See 9 U.S.C. § 2
(2005). "Commerce" has been broadly defined and encompasses contracts relating to
interstate commerce. See In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex. App.-El
Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires commerce to be involved or affected. See L & L Kempwood
Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.), 9 S.W.3d
125, 127 (Tex. 1999) (orig. proceeding); In re Merrill Lynch Trust Co. FSB, 123 S.W.3d
549, 553 (Tex. App.-San Antonio 2003, orig. proceeding).

 The SPD states that Unit Texas "is engaged in transactions involving interstate
commerce (for example, purchasing goods and services from outside Texas which are
shipped to Texas, and traveling on interstate roadways) and your employment involves
such commerce." The SPD further provides that the "Federal Arbitration Act will govern
the interpretation, enforcement, and proceedings under this arbitration requirement." The
SPD expressly excludes application of the TAA: "The arbitrator will apply the substantive
law (and the laws of remedies) of Texas (other than the Texas General Arbitration Act), or
federal law, or both, depending on the claims asserted."

 The FAA may govern a written arbitration clause enforced in Texas state court if the
parties have expressly contracted for the FAA's application. In re AdvancePCS Health,
L.P., 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). When
parties have designated the FAA to govern their arbitration agreement, their designation
should be upheld. See id. at 606 & n.3; In re HEB Grocery Co., L.P., 299 S.W.3d 393,
396-97 (Tex. App.-Corpus Christi 2009, orig. proceeding); In re Brock Specialty Servs.,
LTD., 286 S.W.3d 649, 653 (Tex. App.-Corpus Christi 2009, orig. proceeding); In re
People's Choice Home Loan, Inc., 225 S.W.3d 35, 40 (Tex. App.-El Paso 2005, orig.
proceeding); In re Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex. App.-Houston [1st
Dist.] 2002, orig. proceeding); In re Alamo Lumber Co., 23 S.W.3d 577, 579 (Tex.
App.-San Antonio 2000, orig. proceeding); see also Volt Info. Scis. v. Bd. of Trs., 489 U.S.
468, 478-79 (1989). Moreover, if the parties choose for their arbitration agreement to be
governed by the FAA, the agreement should be enforced regardless of the parties' nexus
to interstate commerce. In re ReadyOne Indus., 294 S.W.3d 764, 769 (Tex. App.-El Paso
2009, orig. proceeding); In re Kellogg Brown & Root, 80 S.W.3d at 617; see also In Re Jim
Walter Homes, Inc., 207 S.W.3d 888, 896 (Tex. App.-Houston [14th Dist.] 2006, orig.
proceeding) ("Courts honor the parties' agreement to be bound by the FAA, upholding
choice-of-law provisions providing for application of the FAA."). Accordingly, pursuant to
the parties' agreement, we apply the FAA.

 III. Validity and Scope


 A party seeking to compel arbitration must: (1) establish the existence of a valid
agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within
the scope of the agreement. In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex.
2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question
subject to de novo review." In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006)
(orig. proceeding). In determining the validity of agreements to arbitrate which are subject
to the FAA, we generally apply state-law principles governing the formation of contracts. 
In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing
First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). If the trial court finds
there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration
to prove his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the non-movants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine
whether an existing arbitration agreement covers a party's claims, a court must "focus on
the complaint's factual allegations rather than the legal causes of action asserted." Id. at
754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must
resolve any doubts about an arbitration agreement's scope in favor of arbitration. Id. at
753. If the arbitration agreement encompasses the claims and the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207
S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz
Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston
[14th Dist.] 2004, no pet.).

 In the instant case, the Receipt states that arbitration is required for "claims or
disputes relating to the cause of an on-the-job injury." The SPD requires arbitration for
"[a]ll claims or disputes . . . between the Company and you." The arbitration requirement
applies to claims or disputes "relating to creation, enforcement[,] or interpretation of the
arbitration provisions," and to any claims regarding "any form of physical or psychological
damage, harm[,] or death." 

 Appellees' arguments below and on appeal do not deny the existence of the SPD
or Morales's signed acknowledgment thereof, nor do they argue that their claims fall
outside the scope of the arbitration provision. Accordingly, we conclude that appellants
have established the existence of an arbitration agreement, and, given the breadth of the
arbitration agreement, that the claims in this lawsuit fall within the scope of this agreement. 
See, e.g., In re FirstMerit Bank, N.A., 52 S.W.3d at 754. Having concluded that a valid
arbitration agreement exists and appellees' claims fall within the scope of that agreement,
we now turn our attention to appellees' alleged defenses to arbitration.. See J.M.
Davidson, Inc., 128 S.W.3d at 227 (stating that if the trial court finds a valid agreement, the
burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing
arbitration); In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.-Houston [14th
Dist.] 2000, orig. proceeding) (disapproved in part on other grounds by In re Halliburton,
80 S.W.3d at 570); City of Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex. App.-Corpus
Christi 1994, no writ). 

IV. The McCarran-Ferguson Act


 Appellees argue that the McCarran-Ferguson Act (the "Act") applies to this case, so
the FAA cannot. (3)
 See 15 U.S.C. §§ 1011-1015. The Act was passed by Congress in 1945
to ensure that the states have the ability to tax and regulate the business of insurance. 
Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 908 S.W.2d 415, 421 (Tex. 1995). 
Under this Act, a state may exercise its police power to regulate and tax the business of
insurance, including those insurance activities and transactions occurring within its borders. 
15 U.S.C. §§ 1011-12; see Combs v. STP Nuclear Operating Co., 239 S.W.3d 264, 269
(Tex. App.-Austin 2007, pet. denied). Section 1012 of the Act provides, in part, as follows:

 (a) State regulation. The business of insurance, and every person
engaged therein, shall be subject to the laws of the several States
which relate to the regulation or taxation of such business.


 (b) Federal regulation. No Act of Congress shall be construed to
invalidate, impair, or supersede any law enacted by any State for the
purpose of regulating the business of insurance, or which imposes a
fee or tax upon such business, unless such Act specifically relates to
the business of insurance . . . .


15 U.S.C. § 1012. In short, under the Act, state laws enacted for the purpose of regulating
insurance prevail over general federal laws that do not specifically relate to the business
of insurance. See id. § 1012(b); In re Autotainment Partners Ltd. P'ship, 183 S.W.3d 532,
537 (Tex. App.-Houston [14th Dist.] 2006, orig. proceeding); see also In re Kepka, 178
S.W.3d 279, 288 (Tex. App.-Houston [1st Dist.] 2005, orig. proceeding), overruled in part
on other grounds by In re Labatt Food Serv., L.P., 279 S.W.3d 640, 647 (Tex. 2009).

 We apply a three-part test to determine if the Act precludes the application of a
federal statute to preempt state insurance law. See Lovilia Coal Co. v. Williams, 143 F.3d
317, 324 (7th Cir. 1998); In re Autotainment Partners Ltd. P'ship, 183 S.W.3d at 537; In
re Kepka, 178 S.W.3d at 288. Under this test, the Act precludes preemption if: (1) the
federal statute at issue does not "specifically relat[e] to the business of insurance"; (2) the
state statute at issue was "enacted for the purpose of regulating the business of
insurance"; and (3) the application of federal statute would "invalidate, impair, or
supersede" the state statute. Lovilia Coal Co., 143 F.3d at 324; In re Autotainment
Partners Ltd. P'ship, 183 S.W.3d at 537; In re Kepka, 178 S.W.3d at 288; see generally
U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500-01 (1993) ("Ordinarily, a federal law
supersedes any inconsistent state law. The [Act] reverses this by imposing what is, in
effect, a clear-statement rule, a rule that state laws enacted 'for the purpose of regulating
the business of insurance' do not yield to conflicting federal statutes unless a federal
statute specifically requires otherwise."). All three factors must be satisfied for the Act to
preclude the application of a given federal statute. Lovilia Coal Co., 143 F.3d at 324; In
re Autotainment Partners Ltd. P'ship, 183 S.W.3d at 537; In re Kepka, 178 S.W.3d at 288. 
 Appellees contend that the Act precludes the application of the FAA in the instant
case because the FAA does not "specifically relat[e] to the business of insurance"; the
Texas Workers Compensation Act was "enacted for the purpose of regulating the business
of insurance"; and the application of the FAA would "invalidate, impair, or supersede" the
workers compensation act. Appellees contend that application of the FAA would impair
or supersede the workers compensation act in two ways. Appellees first argue that
application of the FAA would conflict with the workers compensation act because they have
rights under section 406.033 of the act to bring non-subscriber claims against Caesar's
employer. See Tex. Lab. Code Ann. § 406.033. Citing section 410.104 of the workers
compensation act, which allows the parties to mutually elect binding arbitration as an
alternative to the contested case hearing, appellees also argue that the Texas Workers
Compensation Act does not allow for arbitration of non-subscriber injuries. See id. §
410.104 (Vernon 2006). For the purposes of further discussion herein, we will assume,
without deciding, that the workers compensation act was enacted for the purpose of
regulating the business of insurance.

 Section 406.033(a) of the Texas Labor Code refers to causes of action against a
non-subscriber employer "to recover damages for personal injuries or death sustained by
an employee in the course and scope of the employment." Id. § 406.033(a). Texas Labor
Code section 406.033(e), which applies to non-subscribers such as Unit Texas, provides: 
"A cause of action described in Subsection (a) may not be waived by an employee before
the employee's injury or death. Any agreement by an employee to waive a cause of action
or any right described in Subsection (a) before the employee's injury or death is void and
unenforceable." Id. § 406.033(e). 

 The Texas Supreme Court has examined the interaction between section 406.033
and arbitration and has held that section 406.033(e) does not render an arbitration
agreement void. In re Golden Peanut Co., LLC, 298 S.W.3d 629, 631 (Tex. 2009, orig.
proceeding) (per curiam) ("[A]n agreement to arbitrate is a waiver of neither a cause of
action nor the rights provided under section 406.033(a), but rather an agreement that those
claims should be tried in a specific forum. Accordingly, section 406.033(e) does not render
the arbitration agreement void." (Internal citations omitted)); see also In re Odyssey
Healthcare, Inc., 310 S.W.3d 419 (Tex. 2010) (orig. proceeding). In short, an agreement
to arbitrate does not extinguish a party's substantive rights, but instead provides an
alternative arbitral, rather than judicial, forum for the resolution of disputes. In re Golden
Peanut Co., L.L.C., 298 S.W.3d at 631. Accordingly, we conclude that application of the
FAA does not "invalidate, impair, or supersede" section 406.033 of the workers
compensation act in this matter.

 Appellees next contend that "[a]rbitration is only available in subscriber cases." 
Appellees cite section 410.104(a) of the workers compensation act, which states that
"[a]rbitration may be used only to resolve disputed benefit issues and is an alternative to
a contested case hearing." Tex. Lab. Code Ann. § 410.104(a). Section 410.104(a) further
provides for parties to engage, by agreement, in arbitration if "issues remain unresolved
after a benefit review conference." Id. Obviously, by its own terms, section 410.104(a)
assumes the parties will have engaged in a benefit review conference and will face the
prospect of a future contested case hearing, and both the conference and hearing are
features available only within the context of worker compensation cases involving
subscribers. See id. Accordingly, we agree with appellees that section 410.104(a) applies
to subscribers of workers compensation, rather than non-subscribers such as Unit Texas. 
See id. § 410.104; see also id. § 406.002(b) (Vernon 2006) (stating that an "employer who
elects to obtain coverage is subject to this subtitle"). While we agree that section
410.104(a) applies to subscriber cases, we do not agree that the existence of a statutory
provision allowing agreed arbitration in subscriber cases inherently precludes the possibility
of arbitration in non-subscriber cases. Appellees cite no authorities which construe section
410.104(a) in such a manner, and we decline the opportunity to create such authority by
adopting appellees' interpretation of section 410.104(a).

 In support of their contention that the McCarran-Ferguson Act precludes application
of the FAA, appellees rely upon In re Kepka. 178 S.W.3d at 285. In Kepka, a claimant
brought suit against a nursing home for negligence. Id. The nursing home moved to
compel arbitration based on a written agreement. Id. at 283-86. The claimant contended
that the arbitration agreement failed to comply with the health care liability statute then in
effect. Id. at 287-88. Under that statute, an arbitration agreement was required to be
written in ten point boldface type, clearly and conspicuously informing the patient that he
should consult with an attorney prior to signing the agreement because he was waiving his
legal rights. Id. The nursing home alleged that the FAA preempted application of the
health care statute, and the claimant, in turn, argued that the FAA was reverse preempted
under the McCarran-Ferguson Act. Id. Our sister court held that the McCarran-Ferguson
Act prevented the FAA from preempting the applicable requirements for an arbitration
agreement under the health care law. Id. at 292. 

 The facts of the instant case, however, are more analogous to those found in In re
Autotainment Partners Limited Partnership. 183 S.W.3d 532. In that case, an injured
employee brought suit against his former employer, a non-subscriber under the workers
compensation act, for injuries sustained on the job. Id. at 534. In Autotainment, the court
rejected Kepka's application to the statutes at issue:

 Under the circumstances in Kepka, the notice requirements contained in the
state statute were not required in the FAA, and it was evident that application
of the FAA interfered with the requirements of the state statute. . . . This is
not the case here.


 [The real party in interest's] reverse preemption argument depends upon a
state law that is preempted by the FAA. The FAA preempts a state law only
when that state law is inconsistent with the FAA's policy favoring arbitration. 
Even were we to hold that [the real party in interest's] claim is governed by
the Workers' Compensation Act, which we do not, he has not shown that any
provision in the Act that might be applicable to his claim is inconsistent with
the FAA. Thus, there is no state law preempted by the FAA and there can
be no reverse preemption by the [Act].


Id. at 538 (internal citations omitted). 

 Assuming, without deciding, that the Texas Workers Compensation Act was enacted
for the purpose of regulating insurance, an issue we need not address, appellees have
failed to show that any provision of that act would be impaired or invalidated by the FAA. 
Accordingly, based on the foregoing arguments, analysis, and authority, we conclude that
the McCarran-Ferguson Act does not preclude application of the Federal Arbitration Act
to this case. 

 V. The Texas Workers Compensation Act

 Appellees next contend that the non-waiver provision of the Texas Workers
Compensation Act defeats the arbitration provision. See Tex. Lab. Code Ann. § 406.033. 
As we have previously discussed, however, section 406.033(e) does not render an
arbitration agreement void. In re Odyssey Healthcare, Inc., 310 S.W.3d at ___; In re
Golden Peanut Co., LLC, 298 S.W.3d at 631; see In re Border Steel, Inc., 229 S.W.3d 825,
832 (Tex. App.-El Paso 2007, no pet.) ("Therefore, the FAA preempts the application of
the Texas non-waiver provision to prevent the enforcement of the Arbitration Agreement
at issue here."). Accordingly, we reject this defense to the arbitration agreement.

VI. Unconscionability


 Appellees contend that the arbitration agreement is unconscionable. While
arbitration agreements are not inherently unconscionable, an unconscionable arbitration
agreement will be unenforceable under Texas law. See In re Poly-America, L.P., 262
S.W.3d 337, 348-49 (Tex. 2008) (orig. proceeding); In re Palm Harbor Homes, Inc., 195
S.W.3d at 677-78; In re Weeks Marine, Inc., 242 S.W.3d 849, 860-61 (Tex. App.-Houston
[14th Dist.] 2007, orig. proceeding); see also Tex. Civ. Prac. & Rem. Code Ann. § 171.022
(Vernon 2005) (providing that a court may not enforce an arbitration agreement "if the court
finds the agreement was unconscionable at the time the agreement was made").

 Unconscionability may be either procedural or substantive in nature. In re Palm
Harbor Homes, Inc., 195 S.W.3d at 678. Generally speaking, procedural unconscionability
refers to the circumstances surrounding the adoption of the arbitration provision, and
substantive unconscionability concerns the fairness of the arbitration provision itself. Id.;
In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). More specifically,
procedural unconscionability relates to the making or inducement of the contract, focusing
on the facts surrounding the bargaining process. TMI, Inc. v. Brooks, 225 S.W.3d 783, 792
(Tex. App.-Houston [14th Dist.] 2007, pet denied). Substantive unconscionability refers
to whether the arbitration provision ensures preservation of the substantive rights and
remedies of a litigant. In re Odyssey Healthcare, Inc., 310 S.W.3d at ___; In re Halliburton
Co., 80 S.W.3d at 572. The test for substantive unconscionability is whether, "given the
parties' general commercial background and the commercial needs of the particular trade
or case, the clause involved is so one-sided that it is unconscionable under the
circumstances existing when the parties made the contract." In re FirstMerit Bank, 52
S.W.3d at 757; see In re Palm Harbor Homes, Inc., 195 S.W.3d at 678.

 The party asserting unconscionability bears the burden of proving either procedural
and substantive unconscionability. In re Turner Bros. Trucking Co., 8 S.W.3d 370, 376-77
(Tex. App.-Texarkana 1999, orig. proceeding). Whether a contract is contrary to public
policy or unconscionable at the time it is formed is a question of law. In re Poly-America,
L.P., 262 S.W.3d at 348-49; Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 562 (Tex.
2006). Because a trial court has no discretion to determine what the law is or apply the law
incorrectly, a clear failure to properly analyze or apply the law of unconscionability
constitutes an abuse of discretion. In re Poly-America, L.P., 262 S.W.3d at 349; In re
Green Tree Servicing LLC, 275 S.W.3d 592, 602-603 (Tex. App.-Texarkana 2008, orig.
proceeding).

 Appellees contend that the arbitration agreement is unconscionable because: (1)
a non-subscriber cannot require mandatory enrollment in an SPD, and thus arbitration, as
a condition of employment; and (2) the notice provision in the SPD, which requires
employees to report injuries by the end of the work shift, was unreasonable. Because both
of these contentions relate to the SPD as a whole, and not to the arbitration provision
specifically, we must reject these contentions as a basis to deny arbitration. In re FirstMerit
Bank, 52 S.W.3d at 756 (defenses of unconscionability, duress, fraudulent inducement,
and revocation must specifically relate to arbitration part of contract, not contract as whole,
if they are to defeat arbitration; validity of arbitration provision is separate issue from that
of whole contract). 

 The Texas Supreme Court has held under similar facts that such a "take it or leave
it" offer from an employer to an at-will employee is not, without more, procedurally
unconscionable. See In re Halliburton Co., 80 S.W.3d at 572. Thus, the fact of
non-negotiability alone will not render the arbitration agreement here unconscionable. Id.;
see In re Odyssey Healthcare, Inc., 310 S.W.3d at ___ ("Odyssey is a non-subscriber and,
in lieu of workers' compensation insurance, it provided its workers with an 'Occupational
Injury Benefit Plan.' [Real party in interest] enrolled in this plan as a condition of her
employment."); see also Omoruyi v. Grocers Supply Co., No. 14-09-00151-CV, 2010 Tex.
App. LEXIS 3753, at *32-*33 (Tex. App.-Houston [14th Dist.] May 20, 2010, no pet.) (mem.
op.). 

 In their briefing to this Court, appellees relied on Rent-a-Center West v. Jackson,
581 F.3d 912 (9th Cir. 2009), to support their assertion that mandatory employment
agreements are per se unconscionable. However, this case was pending review by the
United States Supreme Court at the time of briefing in this matter, and the supreme court
recently reversed the Ninth Circuit. See Rent-A-Center W., Inc. v. Jackson, NO. 09-497,
2010 U.S. LEXIS 4981, at *23 (U.S. June 21, 2010). The Supreme Court held:

 Under the FAA, where an agreement to arbitrate includes an agreement that
the arbitrator will determine the enforceability of the agreement, if a party
challenges specifically the enforceability of that particular agreement, the
district court considers the challenge, but if a party challenges the
enforceability of the agreement as a whole, the challenge is for the arbitrator.


Id. at *13-*14. We note that the arbitration agreement at issue contains similar language
regarding the submission of "gateway" matters to the arbitrator, rather than to the courts. 

 Appellees further argue that the arbitration agreement is unconscionable because
it requires employees to report their injuries by the end of the shift in which they are injured. 
However, as noted above, in considering an arbitration clause, unconscionability "must
specifically relate to the [arbitration clause] itself, not the contract as a whole, if
[unconscionability is] to defeat arbitration." In re FirstMerit Bank, N.A., 52 S.W.3d at 756;
see In re Odyssey Healthcare, Inc., 310 S.W.3d at ___. Because this allegation of
unconscionablility does not specifically relate to the arbitration clause, we reject this
defense. See in re FirstMerit Bank, N.A., 52 S.W.3d at 756. In short, while we can
envision a situation where mandatory enrollment in a health benefit plan offered by a non-subscriber could render an arbitration agreement unconscionable, we have not been
presented with such a situation in this case.

VII. Failure of Consideration


 Appellees contend that the SPD gives Unit Texas "exclusive rights to terminate the
arbitration agreement" and that there has been a failure of consideration as to any
revisions of the Plan. The SPD and Plan provide, inter alia:

 The Company presently intends to continue this Plan indefinitely, but the
Company reserves the right to amend, modify, or terminate this Plan at any
time; provided, however, that no amendment or termination will alter the
arbitration provisions of this Plan with respect to, or reduce the amount of
any benefit payable to or with respect to you under the Plan in connection
with, an Injury occurring before the date of the amendment or termination. 
In addition, any amendment or termination of the arbitration provisions of this
Plan shall not be effective until at least 14 days after written notice has been
provided to you. Any amendment or termination will be done by formal
written action of a representative authorized to act on behalf of the
Company.


 . . . . 


 The Company shall have the right and power at any time and from time to
time to amend this Plan, in whole or in part, on behalf of all Employers, and
at any time to terminate this Plan or any Employer's participation in this Plan;
provided, however, that no amendment or termination shall alter the
arbitration provisions . . . with respect to, or reduce the amount of any benefit
payable to or with respect to a Covered Employee under the Plan in
connection with, an Injury occurring before the date of the amendment or
termination. In addition, any amendment or termination of the arbitration
provisions . . . shall not be effective until at least 14 days after written notice
has been provided to the Covered Employees. Any amendment or
termination shall be done by formal written action of a representative
authorized to act on behalf of the Company.


Appellees thus contend that Unit Texas has the unilateral ability to avoid arbitration;
whereas, employees are bound to arbitrate.

 An arbitration agreement may be illusory if a party can unilaterally avoid the
agreement to arbitrate. See In re Palm Harbor Homes, Inc., 195 S.W.3d at 677; In re HEB
Grocery Co., L.P., 299 S.W.3d at 399; see also D.R. Horton, Inc., 207 S.W.3d at 867 ("An
illusory promise is one that fails to bind the promisor because he retains the option of
discontinuing performance without notice."). Stated otherwise, a promise is illusory when
it fails to bind the promisor, who retains the option of discontinuing performance. See Light
v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex. 1994); In re HEB Grocery Co., L.P., 299
S.W.3d at 399.

 Unit Texas's right to amend or terminate the Plan is qualified: any amendment or
termination of the arbitration agreement is subject to fourteen days' notice to the employee
and is inapplicable to claims that have already been initiated. As such, the promise to
arbitrate is not illusory, and the agreement to arbitrate is enforceable. See In re
Halliburton, 80 S.W.3d at 569-70; In re HEB Grocery Co., L.P., 299 S.W.3d at 399; In re
H. E. Butt Grocery Co., 17 S.W.3d at 370; see also In re Kellogg Brown & Root, 80 S.W.3d
at 616 (holding that an agreement to arbitrate was not illusory when it could be amended
or terminated by giving at least ten days' notice and such amendments would not apply to
a dispute for which proceedings had been initiated); Nabors Drilling USA, LP, 198 S.W.3d
at 248-49 (reaching the same result based on similar language).

VIII. Conclusion


 Having found an enforceable arbitration agreement applicable to the facts of this
case, and having rejected appellees' defenses to enforcement of that agreement, we hold
that the trial court erred in denying appellants' motion to compel arbitration. We reverse
the order denying the motion to compel arbitration and remand this cause for further
proceedings consistent with this opinion. 



 







Delivered and filed 

29th day of July, 2010

1. Caesar Morales was employed by Unit Texas Drilling, L.L.C. Unit Drilling Company is the parent 
company of Unit Texas Drilling, L.L.C., and Cliff Welker was Morales's supervisor.
2. In their briefing, appellees contend that the Plan and SPD were not offered into evidence at the
hearing on the motion to compel arbitration. However, the Receipt, the Plan, and the SPD were all attached
and incorporated by reference into appellants' verified motion to compel arbitration. Accordingly, these
documents are properly part of the trial and appellate record in this matter. In contrast, appellees' response
to the motion to compel arbitration contained argument and authorities, but no evidence.
3. The issue of whether the Federal Arbitration Act is "reverse preempted" by the McCarran-Ferguson
Act has been presented to the Texas Supreme Court, but has not yet been decided by that court. In re
Nexion Health at Humble, Inc., No. 04-0360, 2005 Tex. LEXIS 769, at *1, 49 Tex. Sup. J. 43 (Tex. Oct. 14,
2005) (orig. proceeding) (per curiam) (op. on reh'g) ("Because this issue has not been reviewed by the courts
below, we decline to reach the issue and express no opinion as to the merits of this argument.").